## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,**

    **Plaintiff,**

**v.**                                                    **Case No:   6:17-cv-855-Orl-37KRS**

**GENERAL PROJECTION SYSTEMS, INC., GENERAL PROJECTION SYSTEMS, INC. 401(K) PLAN and GENERAL PROJECTION SYSTEMS, INC GROUP HEALTH PLAN,**

    **Defendants.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **SECRETARY'S RENEWED MOTION FOR DEFAULT JUDGMENT (Doc. No. 71)** |
| **FILED:** | **September 25, 2018** |

**I.  BACKGROUND.**

In this case, Plaintiff, the Secretary of Labor ("the Secretary"), alleges that Defendant General Projection Systems, Inc. ("the Company"), took actions that violate the Employee Retirement Income and Security Act ("ERISA").  Doc. No. 1.  The Secretary also named General Projections Systems, Inc. 401(k) Plan ("GPS 401(k) Plan"), and General Projection Systems, Inc. Group Health Plan ("GPS Group Health Plan") as party defendants pursuant to Federal Rule of Civil Procedure 19 "solely to ensure that complete relief may be granted."  *Id.* ¶¶ 4, 5 (collectively, the

Company, the GPS 401(k) Plan, and the GPS Group Health Plan are referred to as the "GPS Defendants").[1]  Cheryl Wayson attempted to file answers on behalf of the GPS Defendants.  Doc. Nos. 40-41, 43.  On March 12, 2018, I struck those answers because Ms. Wayson is not an attorney admitted to practice before this Court and, therefore, cannot represent or file answers on behalf of the GPS Defendants.  Doc. No. 46.  In the Order, I warned the GPS Defendants that they must appear through counsel of record admitted to practice before this Court if they wished to appear and be heard in this case.  *Id*.

On April 9, 2018, the Secretary filed a motion for default and asked that Clerk's defaults be entered against the GPS Defendants because they had failed to appear and defend against the case following the Court's striking of the answers Ms. Wayson attempted to file on their behalf.  Doc. No. 51.  I denied that motion without prejudice because it was not supported by an adequate memorandum of law.  Doc. No. 53.  In that Order (which was mailed to Ms. Wayson as the representative of the GPS Defendants), I warned the GPS Defendants that they must appear through counsel admitted to practice before this Court if they wished to appear and be heard in this action.  I also noted, "**Failure to do so may result in a default judgment being entered against the GPS Defendants**."  *Id.*

On April 24, 2018, the Secretary filed a renewed motion for default and served it on Ms. Wayson as the representative of the GPS Defendants.  Doc. No. 55.  In an abundance of caution, I issued an Order advising the GPS Defendants that, if they wished to contest the motion for Clerk's defaults, they must appear through counsel and file a response to the motion on or before May 14, 2018.  Doc. No. 57.  Again, I warned, "**Failure to do so may result in Clerk's defaults and**

---

[1] Drake and Cheryl Wayson were originally named as Defendants, but they have since been dismissed.  Doc. Nos. 54, 61.

**default judgments being entered against them without further notice from the Court**." *Id.* The Order was served on Ms. Wayson as the representative of the GPS Defendants. The GPS Defendants did not respond to the motion. I denied the motion because the proofs of service were not in the form of an affidavit or declaration under penalty of perjury. Doc. No. 58.

On May 30, 2018, the Secretary again filed a motion for default. The Secretary served the second renewed motion on Ms. Wayson as the representative of the GPS Defendants. Doc. No. 60, at 4-5. The GPS Defendants did not appear by counsel and did not respond to the motion for default. I granted the motion, Doc. No. 62, and Clerk's defaults were entered against the GPS Defendants on June 21, 2018, Doc. Nos. 63-65.

On August 21, 2018, the Secretary filed a motion for default judgment. Doc. No. 69. I denied that motion without prejudice because, among other things, it did not set forth the elements of the Secretary's claims with citations to legal authority or show how the well-pleaded allegations of the complaint establish each of those elements. Doc. No. 70. I ordered the Secretary to file a renewed motion that was limited to addressing whether the complaint establishes liability for each of the counts asserted. *Id.* I ordered the Secretary to serve a copy of any renewed motion on the GPS Defendants. *Id.*

The Secretary filed a renewed motion for default judgment on September 25, 2018. Doc. No. 71. The motion was served on the GPS Defendants by mailing it to Stephen P. Matzuk, Esq. *Id.* at 6-7. As of the writing of this Report and Recommendation, no responses to the motion have been filed and the time for doing so has passed. Thus, the motion for default judgment is ripe for decision.

**II.   FACTS AS ALLEGED IN COMPLAINT.**

   A.   <u>The GPS 401(k) Plan</u>.

The GPS 401(k) Plan is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(3), subject to coverage under ERISA pursuant to 29 U.S.C. § 1003(a). Doc. No. 1 ¶ 4. The GPS 401(k) Plan was established by the Company in 2009. *Id.* ¶ 22. The Company was the sponsor and the administrator of the GPS 401(k) Plan. *Id.* ¶ 7. The Company was responsible for the day-to-day administration of the 401(k) Plan, including the payment of disbursements to GPS 401(k) Plan participants. *Id.* The Company was a "fiduciary" to the GPS 401(k) Plan within the meaning of ERISA, 29 U.S.C. § 1002(21)(A), and a "party in interest" to the GPS 401(k) Plan within the meaning of ERISA, 29 U.S.C. § 1002(14)(A) and (C). *Id.* ¶ 8.

The GPS 401(k) Plan permitted participants to contribute a portion of their pay to the GPS 401(k) Plan through payroll deductions. *Id.* ¶ 24. In accordance with 29 C.F.R § 2510.3-102, participant contributions were required to be forwarded to the GPS 401(k) Plan on the earliest date on which such contributions could be reasonably segregated from the Company's general assets. *Id.* ¶ 25. For payroll periods between December 23, 2011, and August 1, 2014, the Company failed to segregate the contributions from Company assets as soon as it reasonably could do so and never forwarded them to the GPS 401(k) Plan, resulting in a loss of at least $5,765.75 to the GPS 401(k) Plan. *Id.* ¶ 28. During the periods that participant contributions were not remitted to the GPS 401(k) Plan as required, the Company caused or allowed the contributions to be commingled with the general assets of the Company. *Id.* ¶ 29. The Company caused or allowed the commingled funds to be used for Company purposes and obligations rather than for the exclusive benefit of the GPS 401(k) Plan and its participants. *Id.* ¶ 30. The Company failed to take action to restore to the GPS 401(k) Plan the full amount of the un-remitted contributions plus lost interest. *Id.* ¶ 31.

B. The GPS Group Health Plan.

The GPS Group Health Plan is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(3), and is subject to coverage under ERISA pursuant to 29 U.S.C. § 1003(a). *Id.* ¶ 5. The GPS Group Health Plan was established by the Company in conjunction with the health insurance provider United HealthCare Insurance Company ("United") effective September 1, 2012. *Id.* ¶ 23. The Company was the sponsor and the administrator of the GPS Group Health Plan. *Id.* ¶ 9. The Company was at all relevant times a "fiduciary" to the GPS Group Health Plan within the meaning of ERISA, 29 U.S.C. § 1002(21)(A). *Id.* ¶ 10. The Company was at all relevant times a "party in interest" to the GPS Group Health Plan within the meaning of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), and (G). *Id.*¶ 11.

The GPS Group Health Plan was funded by monthly insurance premiums consisting of employee premium contributions withheld from employees' compensation and employer contributions, which were remitted to United. *Id.* ¶ 33. In accordance with 29 C.F.R. § 2510.3-102, participant contributions were required to be forwarded to the GPS Group Health Plan on the earliest date on which such contributions could reasonably be segregated from the employer's general assets. *Id.* ¶ 36. From September 2012 through July 2014, Drake and Cheryl Wayson—who were the President and Vice President, respectively, of the Company, and fiduciaries of the GPS Group Health Plan—caused or allowed the Company to withhold from employees' compensation their GPS Group Health Plan contributions totaling approximately $3,855.38 and failed to segregate those funds from the Company's general assets. *Id.* ¶¶ 12, 15, 17, 20, 37-38. The Company caused or allowed the contributions to be commingled with the general assets of the Company by retaining contributions in the Company's account rather than separating GPS Group Health Plan assets into a separate account. *Id.* ¶ 39. During the periods that the employee GPS

Group Health Plan contributions were not separated from Company assets, the Company caused or allowed the funds to be used for the Company's purposes and obligations or to pay its expenses. *Id.* ¶ 40. On August 4, 2014, United retroactively canceled the GPS Group Health Plan effective July 1, 2014 due to nonpayment of premiums. *Id.* ¶ 41. GPS Group Health Plan participants have incurred unpaid medical claims totaling $10,127, as a result of the Company's comingling of GPS Group Health Plan assets with the Company's assets, the Company's failure to use GPS Group Health Plan assets for the sole benefit of the GPS Group Health Plan, and the Company's misuse of GPS Group Health Plan assets to satisfy the Company's general financial obligations. *Id.* ¶ 42. The Company has failed to take action to restore to the GPS Group Health Plan participants the full amount of their un-remitted contributions plus the unpaid medical claims that would not have occurred but for the actions described above. *Id.* ¶ 43.

    C.    <u>Alleged ERISA Violations</u>.

Based on the allegations above, the Secretary alleges that the Company violated ERISA in the following ways:

- It failed to discharge its duties with respect to the GPS 401(k) Plan and the GPS Group Health Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administration, in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A). *Id.* ¶¶ 45(b), 46(b).

- It failed to discharge its duties with respect to the GPS 401(k) Plan and the GPS Group Health Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA, 29 U.S.C. § 1104(a)(1)(B). *Id.* ¶¶ 45(c), 46(c).

- It caused the GPS 401(k) Plan and the GPS Group Health Plan to engage in transactions which it knew or should have known constituted the direct or indirect transfer of GPS 401(k) Plan and GPS Group Health Plan assets to, or use of GPS 401(k) Plan and GPS Group Health Plan assets by or for the benefit of, a party in interest, in violation of ERISA, 29 U.S.C. § 1106(a)(1)(D). *Id.* ¶¶ 45(d), 46(d).

- 6 -

- It dealt with the assets of the GPS 401(k) Plan and the GPS Group Health Plan in its own interest or for its own account, in violation of ERISA, 29 U.S.C. § 1106(b)(1). *Id.* ¶¶ 45(e), 46(e).

- It acted in the transactions described involving the GPS 401(k) Plan and the GPS Group Health Plan on behalf of a party whose interests were adverse to the interests of the plans or the interests of the plans' participants and beneficiaries, in violation of ERISA, 29 U.S.C. § 1106(b)(2). *Id.* ¶¶ 45(f), 46(f).[2]

## III. LEGAL STANDARD.

In general, a court may enter a default judgment when the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").[3] Thus, to support an entry of default judgment "a complaint must contain sufficient factual matter, accepted as true, to state a

---

[2] The complaint and motion also allege that the Company failed to ensure that the assets of the GPS 401(k) Plan and the GPS Group Health Plan did not inure to the benefit of the Company, in violation of ERISA, 29 U.S.C. § 1103(c)(1). Doc. No. 1 ¶¶ 45(a), 46(a)). The Secretary's memorandum in support, however, nowhere explicitly addresses § 1103(c)(1), which provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." The lone apparent reference to this section in the Secretary's memorandum is the following sentence: "ERISA requires plan assets to be held in trust, and the assets may not inure to the benefit of the employer. 1103 U.S.C. §§ 403(a) and (c)(1)." Doc. No. 71-1, at 11. I assume that this is intended to be a reference to 29 U.S.C. § 1103(a) and (c)(1). Notably, § 1103(c)(1) is worded in the passive voice. Because of this wording, it is unclear whether § 1103(c)(1) can be a basis for liability and under what circumstances. The Secretary has not addressed whether § 1103(c)(1) can be a basis for liability under the facts of this case and, thus, I assume that he has abandoned any claim for liability under § 1103(c)(1). To the extent that the Secretary has not abandoned any claim for liability under § 1103(c)(1), I recommend that the Court find that the Secretary has not shown that a default judgment is appropriate because he has failed to set forth the elements of a claim under § 1103(c)(1) and show how the well-pleaded allegations of the complaint establish each of those elements, as required by my Order denying the Secretary's first motion for default judgment (Doc. No. 70).

[3] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit held that decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, are binding precedent in the Eleventh Circuit.

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

**IV.     ANALYSIS.**

The Secretary alleges that the Company breached its fiduciary duties in administering the GPS 401(k) Plan and the GPS Health Plan. Doc. No. 1. ERISA's civil enforcement provision permits the Secretary to bring a civil action to enjoin any act or practice that violates an ERISA provision, and to obtain other appropriate equitable relief to redress such violation or to enforce any such provision. 29 U.S.C. § 1132(a)(2), (a)(5). In addition, ERISA provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

*Id.* § 1109(a). Under this framework, to prove a breach of fiduciary duty, the Secretary must establish that: (1) the GPS 401(k) Plan and the GPS Group Health Plan were covered plans; (2) the Company was a fiduciary; and (3) the Company breached its fiduciary duties, resulting in loss to the GPS 401(k) Plan and GPS Group Health Plan. *Solis v. Seibert*, No. 8:09-cv-1726-T-33AEP, 2011 WL 398023, at *4 (M.D. Fla. Feb. 4, 2011), *aff'd sub nom. Sec'y, Dep't of Labor v. Seibert*, 464 F. App'x 820 (11th Cir. 2012). I address each of these elements, below.

A.     <u>The GPS 401(k) Plan and the GPS Group Health Plan Were Covered Plans</u>.

Under ERISA, the term "employee benefit plan" or "plan" means "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3).

An "employee welfare benefit plan" is defined, in pertinent part, as "any plan, fund, or program which was . . . or is . . . established or maintained by an employer . . . to the extent that

such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." *Id.* § 1002(1)(A).  By its default, the Company has admitted that the GPS Group Health Plan was established by the Company to provide health insurance.  Doc. No. 1 ¶ 23. This is sufficient to establish that it is an employee welfare benefit plan and, thus, an "employee benefit plan" or "plan" within the meaning of ERISA.

ERISA defines an "employee pension benefit plan," in pertinent part, as "any plan, fund, or program which was . . . or is . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . ."  29 U.S.C. § 1002(2)(A).  By its default, the Company has admitted that the GPS 401(k) Plan was established by the Company and that it permitted participants to contribute a portion of their pay to the GPS 401(k) Plan through payroll deductions.  This is sufficient to establish that the GPS 401(k) Plan is an employee pension benefit plan and, thus, an "employee benefit plan" or "plan" within the meaning of ERISA.  Doc. No. 1 ¶¶ 22, 24; *see also* 26 U.S.C. § 401.

ERISA applies to "employee benefit plans" that are established or maintained by any employer engaged in commerce or in any industry affecting commerce.  29 U.S.C. § 1003(a).  By its default, the Company has admitted that the GPS 401(k) Plan and the GPS Group Health Plan are covered by ERISA.  Doc. No. 1 ¶¶ 4-5.  Thus, the Secretary has established that the GPS 401(k) Plan and the GPS Group Health Plan are covered plans under ERISA.

B.  The Company was a Fiduciary of the GPS 401(k) Plan and the GPS Group Health Plan.

ERISA provides, in pertinent part, that a person (which includes a corporation, 29 U.S.C. § 1002(9)) is a fiduciary with respect to a plan "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . , or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). By its default, the Company has admitted that it was the administrator of the GPS Group Health Plan and the GPS 401(k) Plan. Doc. No. 1 ¶¶ 7, 9. It has also admitted that it was responsible for the day-to-day administration of the GPS 401(k) Plan, including the payment of disbursements to participants. *Id.* ¶ 7. In addition, it has admitted that it commingled employee contributions to the GPS Group Health Plan and the GPS 401(k) Plan with Company assets and used those contributions for Company purposes and obligations. *Id.* ¶¶ 29-30, 39-40. This is sufficient to establish that the Company was a fiduciary of both the GPS Group Health Plan and the GPS 401(k) Plan within the meaning of ERISA. *See LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (internal quotation and citation omitted) ("Consequently, this Court is convinced that [the defendant's] commingling of plan assets with the Company's general assets, and his use of those plan assets to pay Company creditors, rather than forwarding the assets to the Funds means that he exercised [authority or control respecting disposition of plan assets] and hence is a fiduciary . . . under ERISA."); *see also* 29 C.F.R. § 2509.75–8, Question and Answer D-3 ("Q: Does a person automatically become a fiduciary with respect to a plan by reason of holding certain positions in the administration of such plan? A: Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in [29 U.S.C. § 1002(21)(A)]. For example, a plan administrator . . . of a plan must, by the very nature of

his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of [29 U.S.C. § 1002(21(A)]. Persons who hold such positions will therefore be fiduciaries.").

### C. The Company Breached its Fiduciary Duties to the GPS 401(k) Plan and the GPS Group Health Plan.

An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Furthermore, under ERISA, fiduciaries must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims." *Id.* § 1104(a)(1)(B).

By its default, the Company has admitted that it withheld employee contributions to the GPS 401(k) Plan and the GPS Group Health Plan; commingled the contributions with the general assets of the Company; and used the funds for the Company's purposes. Doc. No. 1 ¶¶ 28-30, 36-40. This is sufficient to establish that the Company failed to discharge its duties with respect to the GPS 401(k) Plan and GPS Group Health Plan solely in the interest of the plans' participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable plan administration expenses, thereby violating § 1104(a)(1)(A). It is also sufficient to establish that the Company failed to discharge its duties to the GPS 401(k) Plan and the GPS Group Health Plan with the care, skill, prudence, and diligence required, thereby violating § 1104(a)(1)(B). *See Sec'y of Labor v. Swatkowski*, No. 6:16-cv-359-Orl-37KRS, Doc. No. 21, at 6-9 (M.D. Fla. May 31, 2017), *report and recommendation adopted in relevant part by* Doc. No. 22 (M.D. Fla. Aug. 15, 2017) (granting default judgment for violations of

§§ 1104(a)(1)(A) and (B) where defendant failed to timely remit plan contributions and instead diverted them for daily operations); *Chao v. Wagner*, No. 1:07-CV-1259-JOF, 2009 WL 102220, at *1-2 (N.D. Ga. Jan. 13, 2009) (granting default judgment for violations of §§ 1104(a)(1)(A) and (B) where defendant failed to segregate employee contributions from company assets and forward them to plan).

ERISA also prohibits fiduciaries from engaging in specific actions, including: (1) causing the plan to engage in transactions which they knew or should have known constituted the direct or indirect transfer of plan assets to, or use of plan assets by or for the benefit of, a party in interest (which includes a plan administrator), 29 U.S.C. § 1002(14), 1106(a)(1)(D); (2) dealing with assets of the plan in their own interest or for their own account, 29 U.S.C. § 1106(b)(1); and (3) acting in transactions involving the plan on behalf of a party whose interests were adverse to the interests of the plan of the interests of the plan's participants and beneficiaries, 29 U.S.C. § 1106(b)(2).

By its default, the Company has admitted that it was the administrator of the GPS 401(k) Plan and the GPS Group Health Plan and, thus, that it was a party in interest as to both plans. Doc. No. 1 ¶¶ 7, 9. As explained above, it has also admitted that it withheld employee contributions to the GPS 401(k) Plan and the GPS Group Health Plan; commingled the contributions with the general assets of the Company; and used the funds for the Company's purposes. Doc. No. 1 ¶¶ 28-30, 36-40. This is sufficient to establish that the Company engaged in actions prohibited by 29 U.S.C. §§ 1106(a)(1)(D), (b)(1), and (b)(2). *See Swatkowski*, No. 6:16-cv-359-Orl-37KRS, Doc. No. 21, at 6-9 (M.D. Fla. May 31, 2017), *report and recommendation adopted in relevant part by* Doc. No. 22 (M.D. Fla. Aug. 15, 2017) (granting default judgment for violations of §§ 1106(a)(1)(D), (b)(1), and (b)(2) where defendant failed to timely remit plan contributions and instead diverted them for daily operations); *Chao*, 2009 WL 102220, at *1-2 (granting default judgment for violations of §§

1106(a)(1)(D), (b)(1), and (b)(2) where defendant failed to segregate employee contributions from company assets and forward them to the plan).

Accordingly, I recommend that the Court find that the Company is liable for violations of ERISA.

## V. RECOMMENDATIONS.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **GRANT in part** the Secretary's Renewed Motion for Default Judgment (Doc. No. 71) and **FIND** that Defendant General Projection Systems, Inc., is liable for the violations of 29 U.S.C. §§ 1104(a)(1)(A), 1104(a)(1)(B), 1106(a)(1)(D), 1106(b)(1), and 1106(b)(2) set forth in the Secretary's complaint (Doc. No. 1).   I **FURTHER RECOMMEND** that the Court require the Secretary to file a motion directed to the issue of remedies within a time permitted by the Court and to serve that motion on the GPS Defendants so that they may respond if they choose to appear by counsel and do so.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on October 31, 2018.

        *Karla R. Spaulding*
        KARLA R. SPAULDING
        UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy